IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DEREK JAMES LOOMER,<br>Plaintiff,<br>v.<br>JAISON JENSEN, et al.,<br>Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:26-cv-00765-DBB-PK<br><br>District Judge David Barlow<br>Magistrate Judge Paul Kohler |

This matter comes before the Court for screening of Plaintiff's Amended Complaint under 28 U.S.C. § 1915 and DUCivR 3-2. For the reasons discussed below, the undersigned recommends Plaintiff's federal claims be dismissed and the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## I. BACKGROUND

Plaintiff filed this action on August 19, 2026. Plaintiff is proceeding pro se and in forma pauperis. Plaintiff was an inpatient resident at Odyssey House, a substance abuse and mental health treatment provider. Plaintiff brings claims against Odyssey House and its employees alleging mistreatment, neglect, and abuse he purportedly underwent during his treatment. After the Court screened Plaintiff's initial Complaint, Plaintiff was ordered to cure certain deficiencies. Specifically, the original Complaint did not include any allegations supporting that any Defendant was a state actor for purposes of 42 U.S.C. § 1983. Additionally, while the original Complaint referenced disability discrimination, it did not assert claims under any statute that would provide for federal question jurisdiction.

Plaintiff filed his Amended Complaint on September 14, 2026. Plaintiff asserts claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and various state law claims. Having now screened Plaintiff's Amended Complaint, it is recommended that Plaintiff's federal law claims be dismissed and the Court decline to exercise supplemental jurisdiction over his state law claims.

## II. DISCUSSION

28 U.S.C. § 1915 governs all cases where a plaintiff is proceeding *in forma pauperis* ("IFP"). Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss a cause of action filed IFP at any time the court determines the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or if the litigant seeks monetary relief from a defendant who is immune from such a claim. Although § 1915(e)(2)(B) screening is not required before granting IFP status or ordering service on the defendant, the Tenth Circuit has encouraged district courts to screen IFP cases as soon as practical.[1]

Plaintiff attempts to assert claims under § 1983. As the Court explained previously, "[t]o state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a person acting under color of state law."[2] The defendant must "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[3]

---

[1] *See Buchheit v. Green*, 705 F.3d 1157, 1160 (10th Cir. 2012) ("Though screening might be a good practice and more efficient, we find that nothing in this language *requires* an assigned magistrate judge to screen a case for merit or to make a recommendation for dismissal to the district court before granting IFP status.").

[2] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[3] *Id.* at 49 (internal quotation marks and citation omitted).

Plaintiff's Amended Complaint remains deficient in identifying any Defendant who is a state actor for purposes of § 1983. In support, Plaintiff points to governmental funding, contracting, and licensing to support his assertion that Defendants are state actors. The Court is not persuaded this is sufficient.

Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, the Tenth Circuit has applied various analyses, including the "nexus test," the "public function test," the "joint action test," and the "symbiotic relationship test."[4] Each will be discussed below.

"Under the nexus test, a plaintiff must demonstrate that 'there is a sufficiently close nexus' between the government and the challenged conduct such that the conduct 'may be fairly treated as that of the State itself.'"[5] "[T]he existence of governmental regulations, standing alone, does not provide the required nexus. Similarly, the fact that a private entity contracts with the government or receives governmental funds or other kinds of governmental assistance does not automatically transform the conduct of that entity into state action."[6] Relevant here, the state "has no ability to force, compel, or even encourage a private facility to admit anyone."[7] Thus, when the state regulates a private facility but does not mandate its employees make particular decisions, "[w]e cannot say that the State . . . is responsible for the [treatment provider's]

---

[4] *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002) (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir.1995)).

[5] *Gallagher*, 49 F.3d at 1448 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

[6] *Id.* (internal citation omitted).

[7] *Wittner v. Banner Health*, 720 F.3d 770, 776 (10th Cir. 2013).

decision."[8] Plaintiff does not plead sufficient facts to support that Odyssey House or its employees are state actors under the nexus test. Even assuming that Defendants are subject to state regulation and receive public funding, this is not sufficient.

The "public function" test asks whether the challenged action is a traditional and exclusive function of the state.[9] "This test is difficult to satisfy. 'While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State.'"[10] Courts have recognized that "[s]ubstance abuse and mental health treatment is not traditionally the exclusive prerogative of the state."[11] Thus, the public function test is not applicable.

Under the "joint action" test, the Court determines "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."[12] Plaintiff fails to allege any joint action in the decisions concerning his treatment that form the basis of his claims. Therefore, the joint action test is not met.

The "symbiotic relationship" test examines whether "the state 'has so far insinuated itself into a position of interdependence' with a private party that 'it must be recognized as a joint participant in the challenged activity.'"[13] "[E]xtensive state regulation, the receipt of substantial

---

[8] *Pino v. Higgs*, 75 F.3d 1461, 1466 (10th Cir. 1996) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1006–07 (1982)).

[9] *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 157–58 (1978).

[10] *Gallagher*, 49 F.3d at 1456 (quoting *Flagg Bros. Inc.*, 436 U.S. at 158).

[11] *Allah v. O'Conner*, No. CV 18-4048, 2020 WL 5408066, at *4 (E.D. Pa. Sept. 9, 2020).

[12] *Gallagher*, 49 F.3d at 1453.

[13] *Id.* at 1451 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).

state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action."[14] Plaintiff fails to plead allegations that would meet the symbolic relationship test, nor is there anything to suggest the government has inserted itself into the affairs of Odyssey House to such an extent to meet the symbolic relationship test.

In sum, Plaintiff fails to adequately allege that Odyssey House or its employees are state actors for purposes of § 1983. This is consistent with the decisions reached by other courts. "Courts have routinely held that the entity and personnel offering inpatient treatment programs are not state actors for the purposes of Section 1983."[15] Therefore, Plaintiff has failed to state a viable § 1983 claim and, given the previous order to amend and the apparent futility in allowing further amendment, dismissal is recommended.

As noted, Plaintiff's original Complaint made references to disability discrimination but asserted no claims under any statute that would provide federal question jurisdiction. In his Amended Complaint, Plaintiff clarifies that his disability-related claims are brought under the ADA and the Rehabilitation Act. Plaintiff takes issue with certain treatment methods and practices employed by Defendants during his treatment at Odyssey House. Plaintiff alleges his "disability-related needs were not appropriately considered in treatment decisions, restrictions, or program responses."[16] In essence, Plaintiff expresses disagreement about the decisions made during his treatment. Such allegations are not sufficient to state a claim under the ADA or the

---

[14] *Id.*

[15] *Allah*, 2020 WL 5408066, at *5 (collecting cases).

[16] Docket No. 8 ¶ 54.

Rehabilitation Act.[17] Instead, a plaintiff's disagreement with treatment decisions "sound in medical malpractice rather than discrimination."[18] Therefore, it is recommended that Plaintiff's ADA and Rehabilitation Act claims be dismissed.

With no federal claims remaining, it is further recommended that the Court decline supplemental jurisdiction over Plaintiff's state law claims. A "district court[] may decline to exercise supplemental jurisdiction" over a state-law claims if "the district court has dismissed all claims over which it has original jurisdiction."[19] The Tenth Circuit has stated that "[w]hen all federal claims have been dismissed, the court . . . usually should[] decline to exercise jurisdiction over any remaining state claims."[20] In deciding whether to retain jurisdiction, the Court

---

[17] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (rejecting prisoner-plaintiff's failure-to-treat claims, explaining that "[t]hese are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); *Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43, 49 (10th Cir. 2021) (affirming dismissal of claims based on plaintiff's healthcare providers' alleged failure to properly diagnose and adequately treat his medical condition, stating "that these types of purely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act") (internal quotation marks and citation omitted); *Nasious v. Colorado*, 495 F. App'x 899, 902 (10th Cir. 2012) (stating that "the ADA does not provide . . . a means to challenge purely medical decisions regarding the propriety of a course of treatment") (internal quotation marks and citation omitted).

[18] *Grant v. Alperovich*, 993 F. Supp. 2d 1356, 1364–65 (W.D. Wash. 2014) (collecting cases).

[19] 28 U.S.C. § 1367(c)(3).

[20] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S., 484 U.S. 343, 350 (1988) ("[A] case properly belongs in state court . . . when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain.").

considers factors including "the values of judicial economy, convenience, fairness, and comity."[21]

Consideration of these factors supports declining to exercise supplemental jurisdiction. This case is in its early stages. If the federal claims are removed, Plaintiff's state law claims belong in state court.

## III. CONCLUSION AND RECOMMENDATION

It is therefore recommended that Plaintiff's federal claims be dismissed and the Court decline supplemental jurisdiction over his state law claims.

Copies of this Report and Recommendation are being mailed to all parties who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation within fourteen (14) days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 7th day of October, 2026.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

[21] *Carnegie-Mellon Univ.*, 484 U.S. at 350.